Roger D. **DUNCAN**, Plaintiff,

v.

Robert **ICENOGLE**, et al., Defendant.

No. 94–D–994–S.

United States District Court,
M.D. Alabama,
Southern Division.

Nov. 14, 1994.

Donald C. McCabe, Everett McRae Urech, Daleville, AL, for plaintiff.

John J. Coleman, Jr., Arnold W. Umbach, Birmingham, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is before the court on Plaintiff's Motion to Remand. Defendant asserts that this action is properly before this court because Plaintiff's cause necessarily requires an interpretation of a collective bargaining agreement, which is within the province of exclusive federal court jurisdiction and pre-empted from state court determination by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). For reasons articulated herein, Plaintiff's motion is due to be granted.

### Background

On or about June 30, 1992, Robert Icenogle, Plaintiff's supervisor, suspected Plaintiff, Roger D. Duncan ("Duncan"), of reporting to work under the influence of illegal drugs. Duncan was ordered to submit urine and blood samples or, alternatively, lose his job. Plaintiff agreed to provide the requested specimen. Duncan was then transported to Humana Hospital in Enterprise, Alabama. The plaintiff's blood and urine samples were then taken to Alabama Reference Laboratories in Montgomery, Alabama for analysis. Individuals acting in behalf of United Postal Service ("U.P.S.") suspended Plaintiff pending the results of the analysis.

Duncan was terminated on July 17, 1992 because, as the defendants stated it, Plaintiff tested positive for opiates and thus failed the fitness for duty, drug examination test. Gathering the specifics on the manner in which Duncan's specimen were tested is enigmatic. However, the collective bargaining agreement (hereinafter the "CBA") contained instructions on the proper procedure when testing employees for use of illegal drugs. Article 35, Section 3 of the CBA provides:

> ... UPS will employ a very accurate, two-stage testing program. Urine samples will be analyzed by a highly qualified independent laboratory which is certified by the National Institute on Drug Abuse. All samples will be tested according to DOT drug testing requirements.

Plaintiff filed a grievance with his union regarding his employment discharge. The plaintiff's grievance was heard in Enterprise, Alabama on July 31, 1992. At this grievance hearing, Plaintiff allegedly was told by Defendants that the positive test results motivated the defendant's decision to terminate Plaintiff's employment. Duncan asserts and the defendants deny that they waived a document purportedly bearing positive results of Duncan's urinalysis in Plaintiff's face and stated that they (Defendants) had evidence that Plaintiff's urinalysis returned positive. Also, Plaintiff alleges that the defendants knew the results had not been confirmed quantitatively as required by the CBA and that further testing at Medtox, Inc. detected no illegal drugs in plaintiff's samples.

Plaintiff claims that he withdrew his grievance and voluntarily left the employ of UPS and that in consideration thereof the defendants agreed not to disclose that Plaintiff tested positive for illegal drugs. Defendants deny any affiliation with such a "deal"; however, Defendants admit that the union grievance was not pursued beyond the initial hearing of July 31, 1992.

Duncan claims that on February 4, 1994, he found that the defendants misrepresented the results of his drug test. Plaintiff contends that the document did not confirm a positive test result, as the defendants insisted. Duncan filed a complaint in the Circuit Court of Coffee County, Alabama on June 30, 1994. In his complaint, Duncan alleged that defendants violated §§ 6–5–100, 6–5–101, 6–5–102, 6–5–103 and 6–5–104 of the *Code of Alabama* (1975)—Alabama's statutory fraud provisions.

On July 29, 1994, the defendants file a Notice of Removal in this court. Defendants asserted that Duncan's claim involved interpreting the CBA between U.P.S., the employer, and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, the National Master United Parcel Service Agreement and Southern Conference Supplemental Agreement. Therefore, Defendants contend that 29 U.S.C. § 185(a) preempts the state law claims and that this Court has jurisdiction over this action.

Subsequently, Plaintiff filed a Motion to Remand this cause to the Circuit Court of Coffee County, Alabama. Plaintiff asserts that the cause before this court does not require interpreting the CBA at issue. In essence, Duncan contends that this cause bears but a tangential relationship to the CBA and, therefore, 29 U.S.C. § 185(a) is inapplicable.

### Legal Framework

■ Pursuant to section 301 of the Labor Management Relations Act "[s]uits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties ..." 29 U.S.C. § 185(a). In

*Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the United States Supreme Court held that § 301 serves as a broad source of authority to fashion a body of federal law for the enforcement of collective bargaining agreements. 353 U.S. at 457, 77 S.Ct. at 918. While state courts have concurrent jurisdiction in matters implicating collective bargaining agreements, they must apply federal law to any disputes arising thereunder. Due to the need for uniformity in the interpretation of collective bargaining agreements, any state law cause of action for violation of these agreements is preempted by federal law under § 301. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

■ It is well established that a state law claim must exist independently of the collective bargaining agreement to elude the preemptive grasp of § 301. *See e.g., Allis–Chalmers v. Lueck*, 471 U.S. 202, 218, 105 S.Ct. 1904, 1914–15, 85 L.Ed.2d 206 (1985); *International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 859, 107 S.Ct. 2161, 2167, 95 L.Ed.2d 791 (1987); *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 408–09, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988); *United Steelworkers of America v. Rawson*, 495 U.S. 362, 370–71, 110 S.Ct. 1904, 1910–11, 109 L.Ed.2d 362 (1990). Therefore, where the disposition of the state law claim requires an interpretation of the collective bargaining agreement, the state law claim is not sufficiently independent. *See* 471 U.S. at 218, 105 S.Ct. at 1914–15; 481 U.S. at 859, 107 S.Ct. at 2167; *see also* 486 U.S. 408–09, 108 S.Ct. at 1883 (".... as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes").

Against this backdrop, the court must determine whether § 301 preempts plaintiff's fraud action in which case the court possesses competent jurisdiction and remand would be improper, or whether the state law claim is sufficiently independent of the CBA, in which event the court must remand this

cause to the Circuit Court of Coffee County, Alabama.[1]

## Discussion

■ In relying on the Supreme Court's holding in *Lingle*, Plaintiff Duncan contends that his claim does not require an interpretation of the CBA because the state law fraud claim entails essentially factual issues and a construction of the CBA is not required. In *Lingle*, the plaintiff claimed that her employer discharged her in response to her filing a workers compensation claim. Subsequently, the union representing the plaintiff filed a grievance pursuant to a collective bargaining agreement that protected employees from discharge except for just cause. The collective bargaining agreement provided for arbitration of disputes between the employer and employees regarding the effect and interpretation of agreement. The plaintiff filed her retaliatory discharge action in an Illinois state court while arbitration was proceeding.

The Court found that determining whether the elements for retaliatory discharge were satisfied involved a factual probe into the conduct of the employee and the conduct and motivation of the employer.[2] *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882. In reasoning that the purely factual inquiry did not turn on the meaning of any provision of a state law provision, the Court concluded that the state law remedy was independent of the collective bargaining agreement for § 301 purposes because "resolution of the state law claim did not require construing the collective bargaining agreement."[3] *Id.*

In the case at bar, Plaintiff contends that defendants fraudulently induced him to resign. Duncan asserts that the disposition of this cause requires a factual probe into Defendants' conduct and motivation and, therefore, an interpretation of the CBA is not necessary. The Court finds that Plaintiff's position is sound.

■ To demonstrate an actionable fraud claim under Alabama law, a plaintiff must sufficiently satisfy a finder of fact that the defendant(s) knowingly made a misrepresentation regarding a material fact, he relied on the misrepresentation and he was injured as a result of his reliance. *Voyager v. Guaranty Insurance Company, Inc. v. Brown*, 631 So.2d 848, 850 (Ala.1993). As can be clearly gleaned from *Voyager*, actionable fraud in the State of Alabama pivots on the existence of a misrepresented material fact.

In *Varnum v. Nu-Car Carriers, Inc.*, 804 F.2d 638 (11th Cir.1986), the United States Eleventh Circuit Court of Appeals has held that a fraud claim is not preempted by section 301. In *Varnum*, the plaintiff complained that his former employer had fraudu-

---

1. If 29 U.S.C. § 185 is not invoked, the only possible basis for the assertion of jurisdiction this matter would be 28 U.S.C. § 1332, which requires complete diversity between Plaintiff and all Defendants. *See Owen Equipment & Erection Company v. Kroger*, 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). In this action, Duncan and one or more of the defendants are citizens of Alabama. Given that complete diversity does not exist, this court may not properly assert jurisdiction if 29 U.S.C. § 185 is inapplicable.

2. To show retaliatory discharge under Illinois law, the plaintiff must sufficiently demonstrate that "(1) he was discharged or threatened with discharge and (2) the employer's motive in discharging him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882 (citing *Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1356 (7th Cir.1985) *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986)).

3. The Court noted that such independence did not exist in *Lueck*, 471 U.S. 202, 105 S.Ct. 1904, or *Hechler*, 481 U.S. 851, 107 S.Ct. 2161. In *Lueck*, the plaintiff sought to bring a state law action for bad faith handling of an insurance claim, which concerned benefits authorized by a collective bargaining agreement. The Supreme Court found that the duty allegedly violated was created by the subject collective bargaining agreement. 471 U.S. at 217–18, 105 S.Ct. at 1914–15.

In *Hechler*, Plaintiff alleged that her union negligently failed to provide her with a safe workplace. Plaintiff alleged that the union had a duty to provide her with such a workplace pursuant to the collective bargaining agreement. The Court noted that the plaintiff's claim would require a court to determine whether the collective bargaining agreement placed an implied duty on the union to insure a safe workplace. 481 U.S. at 862, 107 S.Ct. at 2168.

lently misrepresented to him the conditions of employment in order to induce him to accept employment with the defendant. In holding that Varnum's claim was not preempted by section 301, the court noted that Varnum did not complain about the seniority dispatch system itself but, rather, complained about the failure of Nu–Car to apprise him of the impending change while inducing him to accept employment with Nu–Car. *Varnum,* 804 F.2d at 640.[4]

The Court finds that in a fraud case a factfinder must scrutinize the conduct and motivation of the individual accused of fraud.

Defendants claim that the plaintiff has artfully drafted his complaint to circumvent the grasp of § 301 and, in effect, defeat the jurisdiction of this court. In support of its assertion, Defendants point to several cases which purportedly stand for the proposition that state tort claims concerning drug testing when such testing is provided for in a collective bargaining agreement necessarily involve rights arising from the labor contract. Defendants cite *Schlacter–Jones v. General Telephone of California,* 936 F.2d 435 (9th Cir.1991); *Clark v. Newport News Shipbuilding and Dry Dock Co.,* 937 F.2d 934 (4th Cir.1991); *Laws v. Calmat,* 852 F.2d 430 (9th Cir.1988); and *Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111 (1st Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989), as supporting their proposition.

The court finds that Defendants construe these cases too broadly. Moreover, in each case the underlying claim involved an interpretation of the collective bargaining agreement. Therefore, given that the court finds that the underlying claim in this action does not require an interpretation of the CBA, this matter is distinguishable from the cases cited by the defendants.

In *Schlacter–Jones,* the court found that the plaintiff's state law claims were "inextricably intertwined" with an analysis of the subject CBA, and, thus, preempted by § 301. *Schlacter–Jones,* 435 F.2d at 440. The court

noted that each of Schlacter–Jones' claims hinged on the contention that the defendant improperly required plaintiff to submit to a drug test. *Id.* Such a situation is lacking in the case at bar as Plaintiff does not question the validity of Defendant UPS's drug-testing structure.

The *Clark* court, in reasoning that the rights of the defendant with regards to drug testing can be resolved only by a reference to the express and implied provisions of the collective bargaining agreement in that case, held that Clark's state law claims against the defendant were "substantially dependent upon an analysis of the rights and obligations" embodied in the relevant labor contract provision. *Clark,* 937 F.2d at 938. Plaintiff alleged that the union owed him a duty to ensure that the employer's drug-testing procedures were proper. The true essence of the court's holding was that any duty a union owes the represented member arises from the confines of the labor contract.

In *Calmat,* the court reiterated the established principle that a plaintiff may not circumvent § 301 by filing only state law causes of action where the subject collective bargaining agreement is implicated. *Calmat,* 852 F.2d at 432. The *Calmat* court was called on to determine whether the plaintiff's state constitutional claims were preempted by § 301. In holding that section 301 does preempt such claims, the court reasoned that since the collective bargaining agreement recognized the defendant's right to manage the plant, direct the work force, and implement safety rules a determination of the issues presented necessarily required an interpretation of the collective bargaining agreement. *Id.* at 432. Essentially, the court found that questioning the constitutional validity of the drug testing requirement necessarily implicated management's ability to discharge authority granted by the labor contract.

The court in *Jackson v. Liquid Carbonic Corp.* was presented with the issue of "whether an ex-employee's state-law claims

---

**4.** While the *Varnum* court highlighted that the alleged fraudulent activity occurred prior to Varnum commenced his employment with Nu–Car, the *Varnum* court's holding is instructive and,

when considered with other precedent before the Court, does not alter the ultimate determination of the Court.

for violation of privacy, mounted in the wake of the employer's unilateral inauguration of a drug-testing program (on the supposed authority of a collective bargaining agreement), are preempted" by § 301 of the LMRA. *Jackson,* 863 F.2d at 114. The court held that the plaintiff should not be allowed to bypass the grievance procedures where his claims were clearly dependent on the terms of the labor contract. *Id.* at 121–22. As was the case in *Calmat,* the plaintiff's claim(s) in *Jackson* casted a cloud of doubt on the validity of the drug testing regime.

Finally, Defendants attached a copy of an unreported decision from the United States District Court for the Eastern District of Louisiana in support of its proposition. In *Jackson v. United Parcel Service,* Civ. Action No. 89–4830, 1990 WL 182330 (E.D.La.1990), Plaintiff Jackson initially alleged violations of the subject labor contract but later amended his complaint and deleted all references to the labor contract. Jackson's amended complaint set forth only state law violations.[5] The court emphasized that it must focus on the substance rather than the form of the contentions. *Jackson v. United Parcel Service,* at *6 (citing *Eitman v. Orleans Public Service, Inc.,* 730 F.2d 359, 366 (5th Cir. 1984)). The court found that Jackson's complaint did not articulate causes sufficiently independent of the respective collective bargaining agreement because: the defamation claim necessarily implicated the validity of the labor contract at issue; the outrageous claim questioned the reasonableness of the defendant's conduct—which was governed by the labor contract; and the wrongful discharge claim required an excursion into the justification of the defendant's actions—an area within the express province of the collective bargaining agreement.

None of the cases cited by Defendants address the issue of whether § 301 preempts a state law claim for fraud when the plaintiff alleges that the employer fraudulently induced his resignation by claiming that it held positive urinalysis results when in fact, the employer held no such results. In the present case, Duncan does not assert that the defendants used an erroneous procedure or did not follow the procedure laid out by the CBA. Neither does Plaintiff question the employer's right to administer its drug test. Plaintiff's claim merely focuses on the conduct of the defendants and not the CBA. Essentially, Plaintiff's claim as it now stands does not require an interpretation/construction of the CBA; therefore, the disposition of Duncan's claim in the Circuit Court of Coffee County would neither frustrate nor run contrary to Congress' overarching objective of creating a uniform body of federal common law to determine actions requiring an interpretation of collective bargaining agreements.

### *Conclusion*

Given the distinguishing characteristics of the cases cited by Defendants and the case presently before the Court, the Court is unpersuaded by the former. The court finds that this case should be remanded to the Circuit Court of Coffee County of Alabama as the issues presented by the Complaint require factual inquiries and do not implicate the CBA. Plaintiff's claim centers on the knowledge and intentions of the employer and not on the construction of the CBA.

The court advises and reminds the parties that the state courts have concurrent jurisdiction and are competent to hear actions involving labor contract disputes. Therefore, if during the trial it becomes obvious that Plaintiff's claim pivots on the interpretation of a provision lodged in the CBA, the state trial court is obligated to apply federal law when determining the outcome of this cause.

Because Plaintiff's claim does not require an interpretation of the CBA and complete diversity between the parties does not exist, it is CONSIDERED and ORDERED that Plaintiff's Motion to Remand this cause to the Circuit Court of Coffee County, Alabama be and the same is hereby GRANTED.

The clerk is DIRECTED to take whatever action is necessary to effect said REMAND.

---

5. In his supplemented and amended complaint, Plaintiff Jackson alleged claims for defamation, emotional distress, and lost wages—all Louisiana state law claims.