**Gregory M. AGEE, Plaintiff,**

v.

**Jeffrey G. HUGGINS, Defendant.**

**Civ. A. No. 1:94–cv–2717–FMH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 9, 1995.

**1576**

David Stahl, Atlanta, GA, for plaintiff.

Donald Harden, Kenneth Barr, Atlanta, GA, for defendant.

### ORDER

HULL, District Judge.

This action is before the Court on (1) Defendant's Motion for Reconsideration [9–1], (2) Plaintiff's Motion to Remand [4–1], (3) Defendant's Motion to Dismiss [5–1], or in the alternative Motion for Summary Judgment [5–2].

I. *DEFENDANT'S MOTION FOR RE-CONSIDERATION OF THE COURT'S NOVEMBER 17, 1994 REMAND OR-DER*

On September 6, 1994, Plaintiff filed this action in the Superior Court of Forsyth County, Georgia. On October 11, 1994, Defendant removed this action to federal court. On October 31, 1994 Plaintiff filed a Motion to Remand this action to Forsyth County.

On November 17, 1994, the Court entered an Order remanding this action to the state court from which it was removed (the "November 17th Remand Order," or "Remand

Order"). In the November 17th Remand Order, the Court found that Defendant had not removed this action timely to federal court, and based its ruling upon Defendant's untimely removal. Also on November 17, 1994, Defendant filed his response to Plaintiff's Motion to Remand, explaining that his removal notice was filed timely because the last day of the time period had been a Sunday, and the next day was Columbus Day, a federal holiday.[1]

On November 28, 1994, Defendant filed a Motion for Reconsideration of the November 17th Remand Order, and an Emergency Motion to Stay Execution of the November 17th Remand Order. Upon review of those motions, the Court determined that Defendant was not untimely in removing this action to federal court. Therefore, on November 28, 1994, the Court granted Defendant's Emergency Motion to Stay Execution of the November 17th Remand Order, and entered an Order staying execution of its Remand Order. (*See* November 28, 1994 Order of the Court [11–1]).

■ At the time the Court's error was realized, the Clerk of this Court had not sent a certified copy of the Remand Order to the state court. Therefore, this Court retained jurisdiction to correct the error in the Remand Order. *See* 28 U.S.C. § 1447(c); *Hubbard v. Combustion Engineering, Inc.*, 794 F.Supp. 221, 222 (E.D.Mich.1992).[2] In any event, on November 30, 1994, the parties agreed that the November 17th Remand Order should be vacated, and expressly consented to this Court's considering Plaintiff's Motion for Remand, as well as Defendant's

---

1. Under Federal Rule of Civil Procedure 6, Defendant had until November 17, 1994 to file his response to Plaintiff's Motion to Remand. *See* Fed.R.Civ.P. 6(a).

2. The November 28, 1994 Order states "[a] certified copy of the November 17, 1994 Order was mailed to the Superior Court for Forsyth County on Friday, November 25, 1994." (November 28, 1994 Order [11–1]). That reference is an error. The Clerk for the United States District Court for the Northern District of Georgia had sent a copy of the November 17, 1994 Order to the Superior Court for Forsyth County, Georgia, but had not sent a certified copy of the November 17, 1994 Order.

28 U.S.C. § 1447(c) explains that the State Court does not have jurisdiction to proceed with the remanded action until receiving a *certified* copy of the remand order, as follows: "[a] certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such a case." 28 U.S.C. § 1447(c). Here, the clerk of the Superior Court for Forsyth County was never sent a certified copy, and thus, could not receive a certified copy of the Remand Order. Since a certified copy was never sent to the Superior Court of Forsyth County, this Court had jurisdiction to reconsider its Remand Order.

Motion to Dismiss, or in the alternative, Motion for Summary Judgment. (*See* November 30, 1994 Order [12–1] ). On November 30, 1994, the Court entered the consent order and vacated its November 17th Remand Order. (*See* November 30, 1994 Consent Order).

Upon review of the current posture of this action, the Court lifts the stay of execution provided for in the November 28, 1994 Order. Defendant's Motion for Reconsideration [9–1] is granted. The Court will examine Plaintiff's Motion to Remand anew.[3]

## II. *PLAINTIFF'S MOTION TO REMAND*

On September 6, 1994, Plaintiff filed a civil action against Defendant in the Superior Court of Forsyth County, Georgia. On October 11, 1994, Defendant timely removed the action to this Court contending that this Court had subject matter jurisdiction based upon the federal question. Plaintiff moves for remand of this action based upon (1) alleged deficiencies in the removal procedure, and (2) this Court's lack of subject matter jurisdiction. In response, Defendant contends (1) that there was no deficiency in the removal procedure that requires remand, and (2) that the state law claims raised in Plaintiff's Complaint are preempted by the Labor Management Relations Act, ("LMRA") 29 U.S.C. § 185, and thus, this Court has subject matter jurisdiction.

## A. *REMOVAL PROCEDURE DEFICIENCIES*

■ Plaintiff contends that removal is improper because Defendant did not include certain state court documents in his removal petition.[4] 28 U.S.C. § 1446 explains the procedure for removal of an action to federal court and requires that the Defendant include certain documents in the removal petition, as follows:

A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal ... [and] a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a). Defendant emphasizes that he is required to file only documents with which he has been served. Defendant claims that he was never served with any of the state court documents that Plaintiff argues are lacking from the removal petition. If Defendant was not served with a document, then Section 1446 does not require Defendant to file it as part of his removal petition. *See* 28 U.S.C. § 1446(a); *Usatorres v. Marina Mercante Nicaraguenses, S.A.,* 768 F.2d 1285, 1286 (11th Cir.1985). Therefore, Defendant's failure to file documents with which he was never served does not violate Section 1446. In any event, a party's initial failure to file papers as part of the removal petition may be cured by amendment. *Id.* at 1286–87; *Woodall v. Insurance Co. of North America,* 582 F.Supp. 247, 248 (N.D.Ga.1984). Defendant's failure to file the documents complained of by Plaintiff is not grounds for remand. Rather, the subsequent filing of these documents is the proper remedy. The Court finds that there are no procedural deficiencies in Defendant's removal petition, and thus, the Court reaches the question of whether it has subject matter jurisdiction.

## B. *PLAINTIFF'S CLAIMS ARE PREEMPTED BY SECTION 301 OF THE LMRA*

■ A defendant may remove any "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or

---

3. The Court recognizes that Plaintiff has asked for oral argument in this action. Oral argument is discretionary with the Court. *See* LR 220–1(c). Here, the Court finds that the briefs submitted by both parties, as well as the Court's independent research, sufficiently address the issues presented. Therefore, the Court will decide Plaintiff's Motion for Remand without oral argument.

4. As stated above, Defendant timely removed this action to federal court. Plaintiff has withdrawn his previous argument that removal was untimely.

laws of the United States." 28 U.S.C. § 1441(b). A claim "arises under" federal law where Plaintiff's complaint raises federal issues; the so-called "well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Belasco v. W.K.P. Wilson and Sons, Inc.*, 833 F.2d 277, 281 (11th Cir. 1987). Generally, preemption by federal law is a defense which does not give rise to federal question jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Belasco*, 833 F.2d at 282. Where, however, a Complaint "raise[s] a select type of claim that has been singled out by Congress for federal preemption," then the claim is said to "arise under" and may be removed pursuant to 28 U.S.C. § 1441(b). *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987).

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).[5] Section 301 preempts any state law cause of action for violation of a collective bargaining agreement. *Duncan v. Icenogle*, 873 F.Supp. 579, 581 (M.D.Ala. 1994) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). "A state law claim must exist independently of the collective bargaining agreement to elude to preemptive grasp of § 301." *Id.* (citing *Allis–Chalmers v. Lueck*, 471 U.S. 202, 218, 105 S.Ct. 1904, 1914–15, 85 L.Ed.2d 206 (1985)). Here, Defendant contends that Plaintiff's state law claims are preempted by Section 301.

The Court's present task is to determine whether Plaintiff has pleaded a state law cause of action that is preempted by Section 301, thus creating federal question jurisdiction and permitting removal to federal court. To make this determination the Court does not examine Plaintiff's characterization of his Complaint, but rather looks to see whether Plaintiff's claims require interpretation of the collective bargaining agreement between Plaintiff's employer and union. *See, e.g., Allis–Chalmers v. Lueck*, 471 U.S. 202, 218, 105 S.Ct. 1904, 1914–15, 85 L.Ed.2d 206 (1985); *DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir.1994); *Duncan v. Icenogle*, 873 F.Supp. 579, 581 (M.D.Ala.1994).

At all times relevant to this action Plaintiff was employed as a commissioned sales agent by The Prudential Insurance Company of America ("Prudential"). Defendant was the District Manager of the Decatur, Georgia office of Prudential, and was Plaintiff's supervisor. Plaintiff is represented by the United Food and Commercial Workers International Union (the "UFCW"). Prudential and the UFCW are parties to a collective bargaining agreement (the "CBA"), which covers both Plaintiff and Defendant as employees of Prudential.

According to Plaintiff's Complaint, "[o]n or about February 25, 1994, Plaintiff Agee's union, the United Food and Commercial Workers International Union ... caused certain grievances to be filed on its behalf against Defendant Huggins for alleged inappropriate conduct directed toward the Plaintiff and other employees." (Complaint, ¶ 5). Additionally, "[o]n or about March 18, 1994, the UFCW filed an additional grievance through its union steward in Decatur against Defendant Huggins, complaining that Huggins had violated substantial sections of the collective bargaining agreement between The Prudential and its covered workers, especially the Plaintiff." (Complaint, ¶ 6). Plaintiff also alleges that "[d]uring the pendency of the NLRB actions, and as a substantive part of the UFCW collective bargaining agreement, Defendant Huggins is required not to take retaliatory or adverse action toward employees involved in the said actions." (Complaint, ¶ 8). Plaintiff's contends that Defendant defamed Plaintiff in retaliation for the

---

5. In this action, the parties are not diverse, and thus, jurisdiction is founded solely upon 28 U.S.C. § 1331. If 29 U.S.C. § 185 is inapplicable, the Court does not have jurisdiction over this action. *See Duncan v. Icenogle*, 873 F.Supp. 579, 582 n. 1 (M.D.Ala.1994).

grievances filed by the UFCW. (Complaint, ¶ 20).

In his original Complaint filed in state court and made part of this action pursuant to Defendant's removal, Plaintiff alleges three separate counts of defamation. In Count One of his Complaint, entitled "slander," Plaintiff alleges that Defendant "inform[ed] Plaintiff Agee, in the presence of Barras and Taylor, that the Plaintiff had committed sexual harassment with certain unspecified support staff members in the office." (Complaint, ¶ 12). Plaintiff avers that Defendant's alleged statements regarding sexual harassment made to Plaintiff, in the presence of Barras and Taylor, two other Prudential managers, "were false because no bona fide complaint or other statement has ever been filed by anybody alleged to have been harassed. No person has ever been identified as having made such a claim, and no harassment by this Plaintiff ever took place." (Complaint, ¶ 19). Plaintiff contends that Defendant's alleged statements were "made to retaliate for certain grievances filed against Defendant by the UFCW for [Defendant's] prior conduct." (Complaint, ¶ 20).

In Count Two of his Complaint, entitled "libel," Plaintiff alleges that Defendant libeled Plaintiff by "further communicat[ing] the said false and malicious statements concerning Plaintiff Agee's violations to Huggins' supervisor, Company Vice President Robert L. Duffy, in the Jacksonville, Florida office. The statements made to Duffy, possibly in writing, in the form of letters or memos, constitute further publication which has damaged Plaintiff Agee." (Complaint, ¶ 24).

In Count Three of his Complaint, entitled "breach of duty," Plaintiff alleges that "Defendant Huggins has a duty pursuant to law to not publish false and malicious statements about the Plaintiff which are potentially crim-inal in nature, and which has otherwise cause [sic] a loss of self-esteem or reputation among co-workers of Agee." (Complaint, ¶ 29). Plaintiff claims that Defendant "willfully failed to uphold this said duty when he falsely and maliciously published to others statements known to him to be inaccurate and untrue." (Complaint, ¶ 30). Defendant contends that Plaintiff's claims are preempted by Section 301 of the LMRA.

■ Where "the disposition of the state law claim requires an interpretation of the collective bargaining agreement," Plaintiff's state law claim is preempted. *Id.* Here, the Court must determine whether Plaintiff's claims for defamation require an interpretation of the CBA between Plaintiff's employer and the union that represents Plaintiff. If Plaintiff's state law claims require an interpretation of the CBA, then Section 301 preempts Plaintiff's claims.

It appears that the Eleventh Circuit has not addressed yet the preemptive effect of Section 301 in the context of state law defamation claims.[6] The Court finds persuasive, however, the recent Sixth Circuit decision in *DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir.1994).[7] *DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir.1994). The plaintiff in *DeCoe* brought suit in the state court of Michigan alleging, *inter alia*, that defendants slandered the plaintiff by filing charges of sexual harassment and by telling fellow employees that the plaintiff "had committed vulgar and offensive touchings and had directed vulgar and obscene language toward them." *DeCoe*, 32 F.3d at 215. The *DeCoe* plaintiff and the defendants were employees of General Motors Corporation ("GM"). The United Auto Workers, which represented the plaintiff, and GM had a collective bargaining agreement that provided a mechanism for investigating sexual harassment charges against union members. *Id.* at 215. The

---

6. The parties have not directed the Court to any Eleventh Circuit opinion that addresses Section 301 preemption and defamation, nor is the Court aware of any Eleventh Circuit case that addresses directly Section 301 preemption for state law defamation claims.

7. The Sixth Circuit is not the only court to have decided that state law defamation claims are preempted by Section 301. *See also Davis v. United Aerospace Workers Local 148*, No. 93–55068, 1994 WL 561858 at *4, 1994 U.S.App. LEXIS 29113, slip op. at *11 (9th Cir. Oct. 7, 1994); *Trahan v. Bellsouth Telecommunications, Inc.*, 881 F.Supp. 1080, 1085–87 (W.D.La.1995); *Merchant v. CWA*, 145 LRRM 2627, 2629–30, 1993 WL 475480 (E.D.La.1994).

*DeCoe* defendants removed the action based upon federal question jurisdiction contending that Section 301 preempted the plaintiff's claims.

Focusing upon the preemptive force of Section 301, the Sixth Circuit stated that the plaintiff's state law claims were preempted (1) if proof of the state law claim required interpretation of the collective bargaining agreement terms, or (2) if the plaintiff's claim is based upon a right created by the collective bargaining agreement, as follows:

> [W]e have developed a two-step approach for determining whether section 301 preemption applies. First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is not preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*DeCoe,* 32 F.3d at 216. In reviewing the district court's refusal to remand, the *DeCoe* Court held the plaintiff could not establish his burden to show an unprivileged communication, a part of his claim for slander, without interpreting the terms of the relevant collective bargaining agreement. *DeCoe,* 32 F.3d at 217. Therefore, concluded the *DeCoe* court, the plaintiff's state law claims were preempted by Section 301, and the district court was correct in denying the plaintiff's motion to remand. *Id.* Although not adopted expressly by this circuit, the Court finds that the Sixth Circuit's articulation of Section 301 preemption as a two-step process is consistent with the Supreme Court's pronouncement that state law claims are preempted where they require the interpretation of a collective bargaining agreement. *See, e.g., Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Similar to *DeCoe,* Defendant here contends that Plaintiff is unable

to prove an element of his defamation claim without interpreting the collective bargaining agreement; a flaw that is fatal to Plaintiff's case.

■■■■ In Georgia, libel is defined as "[a] false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt or ridicule." O.C.G.A. § 51–5–1(a). Slander is defined in the Georgia Code as follows:

(a) Slander or oral defamation consists in:

> (1) Imputing to another a crime punishable by law;
>
> (2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society;
>
> (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or
>
> (4) Uttering any disparaging words productive of special damages which flows naturally therefrom.

O.C.G.A. § 51–5–4. Both libel and slander require Plaintiff to prove publication of the defamatory material. *See* O.C.G.A. 51–5–1(b) ("publication of the libelous matter is essential to recovery"); *Ekokotu v. Pizza Hut, Inc.,* 205 Ga.App. 534, 536, 422 S.E.2d 903 (1992) (publication required in libel action); *Lepard v. Robb,* 201 Ga.App. 41, 42, 410 S.E.2d 160 (1991) (publication required in libel action); *Kurtz v. Williams,* 188 Ga.App. 14, 15, 371 S.E.2d 878 (1988) ("[p]ublication is indispensable to recover for slander"). In Georgia, however, "[p]ublication of allegedly defamatory information in the course of an employers' investigation of an employee's job performance, when made to persons in authority, is not 'publication' within the meaning of the law." *Lepard v. Robb,* 201 Ga.App. 41, 43, 410 S.E.2d 160 (1991); *see also Ekokotu v. Pizza Hut, Inc.,* 205 Ga.App. 534, 536, 422 S.E.2d 903 (1992); *Kurtz v. Williams,* 188 Ga.App. 14, 15–16, 371 S.E.2d 878 (1988).[8]

---

**8.** Any question of whether the intra-corporate communications exception is an element of the

cause of action or a conditional defense destroyed by proof of malice was answered by the

Here, Defendant contends that all of the communications allegedly made by Defendant were in the course of investigating the allegations against Plaintiff of sexual harassment, and made to persons with authority to be involved in the investigation. If Defendant's position is accurate, then the communications allegedly made by Defendant are not publications within the meaning of Georgia defamation law. Thus, Plaintiff is unable to prove one element of his cause of action for defamation.

■ In Count One of his Complaint, Plaintiff alleges that Defendant, "in the presence of . . . two other managers who had no reporting or oversight authority to, or with, the Plaintiff . . ." accused Plaintiff of "committ[ing] sexual harassment with certain unspecified support staff members in the office." (Complaint, ¶ 12). Plaintiff alleges that Defendant made defamatory statements about Plaintiff in the presence of two managers who had no purpose in being at the meeting between Plaintiff and Defendant.

Plaintiff does not, however, characterize properly the Court's inquiry. As stated above, communication of allegedly defamatory information in the course of an employers' investigation of an employee's job performance, when made to persons in authority, is not 'publication' within the meaning of the law. *Kurtz v. Williams*, 188 Ga.App. 14, 15–16, 371 S.E.2d 878 (1988). Plaintiff alleges that Defendant confronted Plaintiff about allegations of sexual harassment, but contends that those statements were made to individuals who were not "persons in authority." Therefore, the Court must ask whether the two managers alleged to have been present when Defendant communicated the alleged charges of sexual harassment were persons who had authority to receive that information. Only by interpreting the CBA can the Court answer that question.

The CBA expressly provides that Prudential may "interview any Prudential Representative with respect to any phase of the Prudential Representative's work without the grievance committee being present. . . ." (Collective Bargaining Agreement, exhibit 3 to Defendant's Motion for Summary Judgment). To find that Defendant communicated defamatory information to individuals who were not "persons in authority," the Court would have to determine whether having two other managers present, presumably as witnesses, is outside the scope of Prudential's right to interview Plaintiff "with respect to any phase of [Plaintiff's] work without the grievance committee being present." Such a finding can only be made if the Court interprets the CBA to preclude Prudential from interviewing an employee in the presence of other managers as witnesses.

Regardless of the Court's ultimate interpretation, any finding relating to whether Defendant exceeded the scope of his authority by discussing the sexual harassment charges with Plaintiff in the presence of two other managers requires an interpretation of the CBA. As stated above, a state law claim that requires an interpretation of the CBA is preempted by Section 301. *Duncan v. Icenogle*, 873 F.Supp. 579, 581 (M.D.Ala.1994) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). Count One of Plaintiff's Complaint is preempted by Section 301 of the LMRA, and thus, Count One is properly before this Court.

■ In Count Two of his Complaint, Plaintiff alleges that Defendant libeled Plaintiff by "communicat[ing] the said false and

Georgia Court of Appeals in *Kurtz*. In finding that the intra-corporate communications exception is an element of defamation in Georgia, the Court of Appeals stated: "[w]hether the communication was made maliciously and with knowledge of falsity is immaterial when there has been no publication, for without publication there is no libel or slander." *Kurtz v. Williams*, 188 Ga.App. 14, 16, 371 S.E.2d 878 (1988). Thus, Plaintiff's citation to O.C.G.A. § 51–5–9 is inapposite. O.C.G.A. § 51–5–9 removes a defendant's otherwise valid privilege defense to an action for defamation where the communication was "merely a cloak for venting private malice." O.C.G.A. § 51–5–9. As the *Kurtz* Court made clear, however, publication is an element of a defamation cause of action, and intra-corporate communications are not publications regardless of whether the communication was malicious or false. *Kurtz*, 188 Ga.App. at 16, 371 S.E.2d 878. Only where an intra-corporate communication is made to an individual who does not have authority to receive that communication will a publication have occurred. *Id.*

malicious statements concerning Plaintiff Agee's violations to Huggins' supervisor, Company Vice President Robert L. Duffy, in the Jacksonville, Florida office." (Complaint, ¶ 24). Plaintiff contends that the above allegation constitutes libel, and that Defendant's act of sending the letter to Defendant's supervisor was publication within the meaning of the law. Again, Plaintiff's claim requires the Court to interpret the CBA. To determine whether Defendant's supervisor, and by derivation Plaintiff's supervisor, is a "person with authority" the Court must examine the scope of Defendant's actions within the context of the CBA. Whether Defendant's act of sending a letter concerning Plaintiff's alleged misconduct to Defendant's supervisor exceeds the scope of Prudential's right to "interview any Prudential Representative with respect to any phase of the Prudential Representative's work ..." requires the Court to determine the scope of Prudential's right to interview employees, and whether Defendant's communication to Defendant's supervisor about matters related to the interview with Plaintiff exceeded the scope of Prudential's ability to interview its employees.

A company acts through its employees, and Prudential can only interview its employees through other employees. The CBA does not speak of any individual manager's right to interview Prudential employees. Rather, the CBA speaks of "the right of the Employer" to interview Prudential employees. Any determination of which Prudential managerial employees may properly be involved in Prudential's interviews of an employee regarding "any aspect" of that employee's work necessarily requires the Court to interpret the CBA. Therefore, Section

301 of the LMRA preempts Count Two of Plaintiff's Complaint.

■ Count Three of Plaintiff's Complaint is entitled "Breach of Duty." Plaintiff alleges that "Defendant Huggins has a duty pursuant to law to not publish false and malicious statements about the Plaintiff which are potentially criminal in nature, and which otherwise cause a loss of self-esteem or reputation among co-workers of Agee." (Complaint, ¶ 29). It is not clear how Count Three of Plaintiff's Complaint is different from Counts One and Two.

To the extent that Plaintiff alleges that Defendant is liable to Plaintiff for the alleged communications to the two managers and to Defendant's supervisor, Count Three is repetitive of Counts One and Two of Plaintiff's Complaint. If Count Three does repeat the allegations contained in Counts One and Two, then Count Three is preempted by Section 301 for the same reasons as discussed above with regard to Counts One and Two. To the extent that Plaintiff alleges a breach of Defendant's duty as contemplated by the CBA, Plaintiff's claims are preempted by Section 301 since (1) proof of any breach of duty imposed by the CBA requires, by definition, interpretation of the CBA, and (2) any breach of duty premised upon an obligation imposed by the CBA is a right created by the CBA and not state law. *See DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). Under either scenario, Count Three of Plaintiff's Complaint is preempted by Section 301 of the LMRA.

■ In summary, all Counts of Plaintiff's Complaint are preempted by Section 301 of the LMRA, and thus this action is properly before the Court as one arising under federal law. Therefore, the Court denies Plaintiff's Motion to Remand [4–1].[9]

9. Plaintiff continually emphasizes that he is not suing his employer or the union, but instead is suing Defendant as an individual. Plaintiff also emphasizes that he is asserting purely state law claims. The allegations in his Complaint, as well as the context of these allegations, do not support Plaintiff's position. Plaintiff is suing Defendant, his supervisor, for allegedly defamatory comments (1) that allegedly occurred at work—in a meeting that was within the scope of Defendant's duties as Plaintiff's supervisor, (2) that were related to Plaintiff's performance at work, (3) that according to Plaintiff "were made to retaliate for

certain grievances filed against the Defendant by the UFCW for his prior conduct," and (4) that, again according to Plaintiff, fall within the breadth of the CBA—as evidenced by Plaintiff's filing of grievances through the UFCW against Defendant, and Plaintiff's filing of a complaint with the NLRB. It is in the light of these factors that the Court must consider Plaintiff's Complaint.

Plaintiff argues that the Court's inquiry should be confined to the face of the Complaint; the so-called well-pleaded complaint rule. However,

## III. DEFENDANT'S MOTION FOR DISMISSAL OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Having concluded that federal question subject matter jurisdiction exists, and that Defendant's removal of this action is proper, the Court now addresses whether Plaintiff may maintain a suit under Section 301 based upon the allegations in Plaintiff's Complaint. Defendant contends that Plaintiff has failed to state a claim because (1) Plaintiff has not exhausted his contractual remedies, and (2) Plaintiff has not alleged that the Union breached its duty of fair representation, so as to excuse Plaintiff's failure to exhaust his contractual remedies.

Defendant moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff has responded to Defendant's Motion to Dismiss and to Defendant's Motion for Summary Judgment. After review of the record, the Court finds that the parties' reliance upon materials outside of Plaintiff's Complaint suggests that the issues in this action are best resolved by deciding Defendant's Motion for Summary Judgment.

### A. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) defines the standard for summary judgment as follows: courts should grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The general rule of summary judgment in the Eleventh Circuit states that the moving party must show the

court that no genuine issue of material fact should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–09 (11th Cir. 1991). Unless the movant for summary judgment meets its burden under Federal Rule of Civil Procedure 56, the obligation of the opposing party does not arise even if no opposing evidentiary material is presented by the party opposing the motion. *Clark*, 929 F.2d at 607–08.

While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510.

Where neither party can prove either the affirmative or the negative of an essential element of a claim, the movant meets its burden on summary judgment by showing that the opposing party will not be able to meet its burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In *Celotex*, the Supreme Court interpreted Federal Rule of Civil Procedure 56(c) to require

---

where an area of the law is subject to complete preemption, then the preemptive force of the statute is considered "so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). In areas that have been preempted completely, the Court must be wary of the artful pleading of

the drafting plaintiff. *See, e.g., Pruitt v. Carpenters' Local Union No. 225*, 893 F.2d 1216, 1218–19 (11th Cir.1990); *Baptist Hosp. of Miami, Inc. v. Timke*, 832 F.Supp. 338, 340–41 (S.D.Fla. 1993); *Kindness v. Spang*, 716 F.Supp. 1535, 1537–38 (M.D.Pa.1987); *Brooks v. Solomon Co.*, 542 F.Supp. 1229, 1230–32 (N.D.Ala.1982). As demonstrated above in the text, whether Defendant's communications were published within the meaning of Georgia defamation law requires interpretation of the CBA, and thus, Plaintiff's claims are preempted by Section 301 of the LMRA.

the moving party to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim. Thus, the movant's burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

## B. *PLAINTIFF'S FAILURE TO EXHAUST HIS CONTRACTUAL REMEDIES*

■■■ Where a collective bargaining agreement contains an arbitration clause, the "contractual grievance and arbitration procedures must be exhausted before an employee files a § 301 suit." *Bowen v. United States Postal Service,* 459 U.S. 212, 232, 103 S.Ct. 588, 600, 74 L.Ed.2d 402 (1983) (citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)). The CBA contains an arbitration provision and a grievance procedure provision. *See* CBA, Art. 24, Art. 25. Plaintiff does not, however, allege in his Complaint that he has exhausted all his contractual remedies.[10]

■■■ Defendant introduces evidence showing that Plaintiff has filed grievances addressing the same substantive allegations as contained in his Complaint. Specifically, Defendant offers evidence that on April 8, 1994 Plaintiff filed a grievance with the UFCW alleging that "Agent Agee was accused by [Manager] Jeff Huggins in the presence of two other [managers] of sexual harassment...." (April 8, 1994 Grievance, exhibit 6 to Defendant's Motion for Summary Judgment). On June 22, 1994, Plaintiff filed a formal charge with the National Labor Relations Board alleging that Defendant's actions constituted a violation of the LMRA. On June 24, 1994, the NLRB deferred Plaintiff's charges so that they "can be considered and resolved under the grievance-arbitration provisions embodied in the current labor agreement between the parties." Plaintiff fails to produce any evidence that suggests Plaintiff has exhausted his contractual remedies. Indeed, the evidence in the record establishes the exact opposite; that Plaintiff is currently exercising his contractual remedies, but has not exhausted them.

Plaintiff's only argument responsive to the exhaustion of remedies requirement is that the NLRB's deferral for arbitration letter does not include Plaintiff's allegations regarding Defendant's defamatory statements. The record does not support Plaintiff's position.[11] In Plaintiff's Complaint originally filed in state court, Plaintiff attached a letter to Plaintiff from Robert L. Duffy, Vice President of Regional Marketing for Prudential, which provides notice to Plaintiff that he is now on probation. In explaining the basis for placing Plaintiff upon probation, Duffy lists several incidents that led to Duffy's decision to place Plaintiff upon probation. Included in that list is a statement about Plaintiff's "unprofessional behavior toward both the marketing support staff and the Representatives in the Decatur Agency." (Complaint [1–1] ). All three counts of Plaintiff's Complaint are based upon accusations by Defendant concerning Plaintiff's allegedly improper conduct towards other employees.[12]

---

10. Plaintiff's failure to allege exhaustion of his contractual remedies is sufficient to support dismissal of Plaintiff's Complaint. However, the Court will examine the other evidence in the record that addresses whether Plaintiff has exhausted his contractual remedies.

11. Indeed, Plaintiff has not alleged that he has exhausted his contractual remedies. That in and of itself is sufficient to warrant dismissal of Plaintiff's claims. However, the Court will examine briefly Plaintiff's argument over what was deferred to arbitration by the NLRB.

12. Duffy's choice of words does not convey clearly that Plaintiff has been accused of sexual misconduct. Indeed, Defendant disputes whether Plaintiff was accused of was sexual harassment or just other non-sexual harassment of employ-

ees. (*See* Defendant's Memorandum in Support of motion to Dismiss, or in the Alternative, for Summary Judgment, 1 n. 1). In any event, Plaintiff confirms that Duffy's letter is referring to the same conduct that forms the basis for Plaintiff's Complaint. In Count Two, Plaintiff alleges that he learned of Defendant's communication to Duffy regarding the accusations by Defendant against Plaintiff in a May 26, 1994 letter from Duffy to Plaintiff. (*See* Complaint, ¶ 26). That letter, attached to Plaintiff's Complaint as "exhibit B," provides the factual support for Count Two of Plaintiff's Complaint, and is the same letter where Duffy explained myriad reasons for placing Plaintiff on probation, including Plaintiff's alleged behavioral improprieties.

In the NLRB deferral letter, the author explains that the NLRB's deferral is based upon a belief that the issues raised in the context of Plaintiff's probationary status are best resolved by the grievance and arbitration provisions in the CBA, as follows:

[m]y reasons for deferring the above-referenced charge are as follows: The unfair labor practice issues raised by the instant charge, the placing of Agent Greg Agee on probationary status, is one that can be considered and resolved under the grievance-arbitration provisions embodied in the current labor agreement between the parties. The Employer has advised that grievances are pending concerning the issues alleged.

(June 24, 1994 NLRB letter, exhibit 2 of Defendant's Motion for Summary Judgment). The NLRB deferred to arbitration not only whether Plaintiff could be placed upon probation, but also the incidents which formed the basis for Duffy's decision to place Plaintiff on probation, as well as the incidents that are the subject of Plaintiff's grievances against Defendant. The issues deferred to arbitration are outlined in Duffy's May 26, 1994 letter and in the grievances and NLRB complaint filed by Plaintiff.

Based upon a review of the record, the Court finds that the factual allegations that form the basis for Plaintiff's Complaint are the same claims that were deferred to arbitration by the NLRB, and that Plaintiff has failed to exhaust his contractual remedies. Absent an exception to Section 301's requirement that a Plaintiff exhaust his contractual remedies before filing suit, summary judgment in favor of Defendant is appropriate.

 A plaintiff is excused from the exhaustion of contractual remedies requirement where the union breaches its duty of fair representation to the employee. *Vaca v.*

*Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967); *Amburgey v. Consolidation Coal Co.,* 923 F.2d 27, 29 (4th Cir.1991). Here, however, Plaintiff has not alleged, much less provided any evidence, that the UFCW breached its duty of fair representation to Plaintiff. From the record, it appears that Plaintiff has access to and is pursuing currently his remedies through the arbitration-grievance procedure provided in the CBA. The Court finds (1) that Plaintiff has failed to exhaust his contractual remedies, (2) that there is no basis in the record for excusing Plaintiff from the exhaustion of contractual remedies, and (3) therefore, Plaintiff is barred from bringing a Section 301 claim. The Court grants Defendant's Motion for Summary Judgment [5–2] and dismisses Plaintiff's Complaint against Defendant. Having granted summary judgment in favor of Defendant, the Court denies as moot Defendant's Motion to Dismiss [5–1].

### III. *CONCLUSION*

Defendant's Motion for Reconsideration [9–1] is **GRANTED**. Plaintiff's Motion to Remand [4–1] is **DENIED**. Defendant's Motion for Summary Judgment [5–2] is **GRANTED**. Defendant's Motion to Dismiss [5–1] is **DENIED** as moot. Plaintiff's Complaint is dismissed against Defendant. The Clerk of the Court is requested to enter final judgment in favor of the Defendant on Plaintiff's Complaint.

**SO ORDERED.**